NIPPER *vs.* GROESBECK.

Where both the subscribing witnesses to a will testified that they saw the testatrix sign the will, and that they became subscribing witnesses at her request; and one of them stated that a short time before the testatrix signed it, it had been put into her hands to read; that she read it, and then requested some one else to read it; and that S. then read it aloud, in the presence of the testatrix and the witnesses; that about an hour afterwards the testatrix requested to have the will brought, that she might sign it, and on its being brought she signed it, the subscribing witnesses attaching their signatures, upon her suggestion and at her request; and the other subscribing witness testified that after the reading of the will, the testatrix said " bring me the will, and I will write my name;" that after her signature had been completed, and those of the attesting witnesses had been attached, she declared she was glad it was done with and off her mind; and the will was thereupon folded up and handed to G. for safe keeping; *Held,* that this was a valid publication and execution of the will.

THIS was an appeal by George Nipper, from a decree of the surrogate of the county of Oswego, admitting the will of Mary M. Nipper, deceased, to probate. The material facts appear in the opinion of the court.

*R. H. Tyler,* for the appellant.

*D. H. Marsh,* for the respondent.

*By the Court,* BACON, J. The requisites to the due execution of a will, in this state, as prescribed by the statute, (2 *R. S.* 124, § 32, *3d ed.*) are very familiar, and are in substance, 1st. A subscription by the testator at the end of the will; 2d. The making or acknowledgment of such subscription in the presence of the attesting witnesses; 3d. A declaration by the testator, at the time of subscription or acknowledgment, that the instrument is his will; and 4th. The signatures of two attesting witnesses, at the testator's request. It will not be doubted, I think, that all these requisitions have been complied with in the case before us; unless it be the third, which requires what is technically known as the publication of the will; and that is the only important question in this case. If the will has been

substantially published, it was properly admitted to probate. If not, the order of the surrogate must be reversed, and the will of the testator must be set aside. This result should not follow unless there has been so great a departure from the provisions of the statute, that public policy requires it to be upheld even to the letter, and the expressed wishes of the testator defeated.

In respect to what shall be deemed a sufficient publication, the late chancellor of this state, in *Brinckerhoof* v. *Remsen*, (8 *Paige*, 599,) lays down the rule that no particular form of words is necessary, under the provision of the statute, to communicate the information by the testator that he understands the nature of the instrument he is executing, and intends to recognize it as his will. The important and the only important thing is that the testator understands, and the witnesses know, that the instrument is executed as a will. The same doctrine is reiterated in the above case in the court of errors, to which it was taken by appeal. (26 *Wend.* 325.) The chief justice, in his opinion, states emphatically, " I agree that no form of words will be necessary—that the legislature only meant that there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will. *Any communication of this idea, or to this effect,* will meet the object of the statute." So in *Seguine* v. *Seguine*, (2 *Barb. S. C. R.* 385,) Edmonds, J. speaking of the publication says, the object of the statute was to secure evidence that a testator, when he executed the instrument, knew that it was a will, and not an indenture or deed of a different character. And in *Torry* v. *Bowen*, (15 *Barb.* 304,) the court say, " It is agreed, and so are the cases, that the declaration need not be in the exact words of the statute, but that words equivalent in import and signification, or acts and words together which amount to a clear and unequivocal declaration by the testator of his intention to execute the instrument as his last will and testament, will be sufficient." In that case all the testator did was to sign the will in the presence of the witnesses, and pointing to the signature and seal declare that to be his hand and seal, for the uses and purposes

therein expressed. When asked by a third person to explain the instrument, he replied that the paper explained itself, and took no more part in the execution. A witness testified that he read the attestation clause to the witnesses, although neither of the subscribing witnesses was able to recall this fact, or to state that the testator mentioned the word " will" at any time during the execution. And yet the court held that there could be no doubt that the witnesses knew the instrument was executed as a will, by the testator, and this was sufficient evidence of publication.

In the case of *Lewis* v. *Lewis*, (1 *Kern.* 220,) which is claimed as a decisive authority on the point of the alleged insufficient publication of the will in the case before us, it appears that the will was not signed in the presence of the witnesses, and when they subscribed as attesting witnesses it was so folded that they could not see the signature, and the only acknowledgment or declaration by the testator was, " I declare the within to be my will and deed." This the court very properly held to be an insufficient execution. As the instrument was not seen by the witnesses, they could not identify it as a will, and the declaration of the testator was equivocal and did not necessarily inform the witnesses that it was a will. The same expression would have equally well applied to, and might be well understood as, the acknowledgment of a deed, or any sealed indenture.

In the light of these adjudged cases, and the principle to be extracted from them, it seems to me it cannot be doubted that there was such an execution of the will, in this case, as satisfies all the requirements of the statutes. Both the subscribing witnesses testify that they saw the testatrix sign the will, and that they become subscribing witnesses at her request. Mrs. Groesbeck states that a short time before the testatrix signed it, it had been put into her hands to read ; that she read it and then requested some one else to read it ; and that a Mrs. Sprague then read the will aloud, and both witnesses were then present. In about an hour afterwards, she requested to have the will brought that she might sign it, and it was accordingly

Nipper *v.* Groesbeck.

brought, and she signed it, the subscribing witnesses attaching their signatures, upon her suggestion and at her request. The other witness, Miss Follett, is still more explicit, stating that when the preparations were made for its execution, after it had been read by the testatrix and again by Mrs. Sprague, the testatrix said, " bring me the will, and I will write my name." After her signature had been completed, and those of the attesting witnesses had been attached, she declared she was glad it was done with and off her mind, and the will was thereupon folded up and handed to Miss Groesbeck, who retained it until it was offered for probate. In the light of this testimony, which is all there is in the case on the subject of the publication and the circumstances attending the execution, it cannot be questioned, I think, that the testatrix was entirely aware of the character of the instrument; that she knew she was executing a will, and designed the parties attesting it to be apprised of her act, and, substantially in compliance with the statute, made a declaration of such intent and act. That they knew it to be a will, and subscribed under such knowledge and with a view to certify to the fact that it was the will and testament of the testatrix, admits of no debate.

There was then, in my judgment, a good and sufficient execution and publication of the will in question; and although I agree with my brother ALLEN, that the statute on the subject of the proper execution of wills is a beneficent and wise statute, and its provisions should be adhered to, yet I cannot think it so essential to maintain the strict letter of the law as to lose sight of its spirit, nor that the deliberate will of a testator should be frustrated by an obstinate adherence to a prescribed formula, when the substance and essence of the provision have been fairly complied with.

The order appealed from must accordingly be affirmed.

[ONONDAGA GENERAL TERM, October 7, 1856. *Pratt, Bacon* and *W. F. Allen,* Justices.]